UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| SANDRA SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 16 CV 07215 |
| ) | Hon. Marvin E. Aspen |
| MGM RESORTS INT'L, ) | |
| A DELAWARE CORPORATION D/B/A ) | |
| GRAND VICTORIA CASINO, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Presently before us is Defendant Elgin Riverboat Resort d/b/a Grand Victoria Casino's, ("GVC")[1] motion to dismiss Counts II and IV of Plaintiff Sandra Smith's complaint for failure to state a claim. (Dkt. No. 5.) For the reasons stated below, we grant GVC's motion to dismiss, without prejudice.

**FACTUAL BACKGROUND**

At the motion to dismiss stage, we accept all well-pleaded factual allegations as true, and draw all inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). Sandra Smith was diagnosed with cervical cancer in November 2009. (Compl. ¶ 11.) At the time of her diagnosis, she had worked as a cocktail server at GVC for almost two decades. (*Id.* ¶ 8.) Smith continued to work at GVC during her cancer treatments until her termination on May 31, 2013. (*Id.* ¶ 55.)

Smith began to receive cancer treatments in November 2009, at which time she underwent an intensive three-month treatment regimen before returning to work on March 9, 2010. (*Id.* ¶ 11.) Upon her return to work, Smith still needed one or two days off every

---

[1] GVC states that Smith improperly sued it as MGM Resorts International and has not corrected the error despite its requests. (Dkt. No. 6 at 1.)

three months to attend to treatment and recovery. (*Id.* ¶ 12.) Despite her continuing need for time off for cancer treatments, Smith alleges GVC "cut off Sandra's Family and Medical Leave (FMLA) time immediately." (*Id.* ¶ 13.) As a result, Smith states she began to use paid vacation and unpaid sick days "to avoid conflict and keep the job she needed." (*Id.* ¶ 14.) In early 2011, GVC paid Smith for the vacation days she used in 2010, but characterized them as "leave of absence days," which Smith alleges had the negative effect of pushing back her healthcare benefits start date until October 2011. (*Id.* ¶ 17.) In January 2011, Smith underwent a second round of intensive chemotherapy. (*Id.* ¶ 18.) From February until June 2011, she received chemotherapy three times per week and worked at night after her treatments. (*Id.*)

In June 2011, Smith learned her cancer had returned, spread, and posed a serious threat to her life, which required her to undergo additional treatment. (*Id.* ¶ 20.) Smith's doctors told her that this type of diagnosis meant she had, at most, three to five years to live, and one year or less to live if her cancer did not respond to treatment. (*Id.* ¶ 19.) Smith informed her supervisors of the severity of her diagnosis, but alleges GVC again "cut off" her FMLA leave time, claiming that her required treatment each quarter "was for 'just a couple scans' and thus was not actual treatment under the FMLA." (*Id.* ¶¶ 20, 21.) From June 2011 through July 2012, Smith used paid vacation days and unpaid personal days for her cancer treatment without stating the purpose, because she was afraid to ask GVC about FMLA leave and wanted to avoid the delay of her benefits start date. (*Id.* ¶¶ 28–35.) GVC continued to characterize her time off as leave of absence days and to push back the start date of her benefits in 2012. (*Id.*)

In July 2012, Smith's doctors found a spot on her lungs that required surgical removal in late August 2012. (*Id.* ¶ 30.) By the time Smith returned to work on October 9, 2012, she feared "even asking about FMLA coverage for her continuing treatments" out of concern that GVC

would again categorize her time off as leave of absence days and further delay her benefits start date in 2013. (*Id.* ¶ 31.) Each time she requested time off or was cited for an attendance issue, Smith reminded GVC's human resources department about her illness and that it required her to take time off for treatment and recovery. (*Id.* ¶ 34.) Even so, as Smith underwent cancer treatment, her supervisors at GVC asked her how much longer her treatment would last and noted "the increasing burden on GVC's employee health insurance policy and other benefits." (*Id.* ¶¶ 23, 35.) By the end of April 2013, GVC had pushed back her benefits start date to December of that year, after again characterizing her time off for cancer treatment as leave of absence days. (*Id.* ¶¶ 40–42.)

During the course of her cancer treatment from 2009 to 2013, Smith continued to receive positive reviews until May 2013, the month of her termination. (*Id.* ¶¶ 8, 36–39.) On May 17, 2013, Smith was reprimanded for "failing to have an attitude conducive to a productive work environment," a charge Smith believed was fabricated because of her costly medical treatments. (*Id.* ¶ 43.) The reprimand arose from an incident in which Smith failed to serve a supervisor quickly on a night when the casino floor was understaffed and Smith was busy waiting on customers. (*Id.* ¶¶ 44–45.) On that same day, Smith had requested two leave of absence days for her continuing cancer treatment. (*Id.* at ¶ 46.)

Just over a week later, on May 26, 2013, Smith noticed a new, younger server had not cleaned up customers' used glasses and napkins from her station, as required by GVC, and Smith handed the server a "friendly note (with a 'smiley face')" to remind her to clear these items. (*Id.* ¶¶ 48–49.) When Smith arrived at work on May 30, 2013, her supervisor David Allred told her she was suspended pending an investigation of the May 26, 2013 incident and told Smith to "sign a form with false statements as to the 'incident,'" which she refused to do. (*Id.* ¶¶ 50–54.)

GVC fired Smith the next day, May 31, 2013. (*Id.* ¶ 55.) After pressing GVC for a reason for her termination, Smith was told that she was not getting along with other servers, "bossed them around," and had "no right to give that note" to the younger server she had tried to help. (*Id.*) Sharon McGill in GVC's human resources department ended the May 31 conversation by telling Smith, "as of tomorrow, you have no insurance coverage or benefits." (*Id.* ¶ 56.)

Smith received a right to sue letter from the EEOC on April 18, 2016. (Compl. ¶ 5.) Smith sued GVC on July 13, 2016, asserting claims for wrongful termination pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 (2012) and Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34 (2012); violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654 (2012); and retaliatory discharge under Illinois law. On September 19, 2016, GVC moved to dismiss Smith's FMLA claim (Count II) and her state-law retaliatory discharge claim (Count IV). (Dkt. No. 5.)

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss is meant to "test the sufficiency of the complaint, not to decide the merits of the case." *Gibson v. City of Chi.*, 910 F.2d 510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A court should grant a Rule 12(b)(6) motion to dismiss only if a complaint lacks enough facts "to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *accord. Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Although a facially plausible complaint need not contain "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555, 127 S. Ct. at 1964.

## ANALYSIS

### I. Count II: FMLA

GVC moves to dismiss Smith's FMLA count as untimely under the relevant statute of limitations. *See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("While a statute of limitations defense is not normally part of a motion to dismiss, . . . when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."). The FMLA allows an employee to take up to twelve weeks of leave in a twelve-month period to attend to a serious health condition without losing his or her job. 29 U.S.C. §§ 2614–15. The FMLA authorizes private actions against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise any right" it provides, or who "discharge or in any other manner discriminate against any individual opposing any practice" it prohibits. 29 U.S.C. § 2615(a). FMLA claims are subject to either a two year or three year statute of limitations. *Id.* § 2617(c). Generally, a plaintiff must bring an FMLA claim "not later than 2 years after the date of the last event constituting the alleged

violation for which the action is brought." *Id.* § 2617(c)(1). However, an FMLA claim "may be brought within 3 years of the date of the last event constituting the alleged violation" if the violation was "willful." 29 U.S.C. § 2617(c)(2).

Smith raises two arguments in support of the timeliness of her FMLA claim. First, Smith argues GVC's conduct was willful, and therefore the three-year statute of limitations should apply. (Pl.'s Resp. (Dkt. No. 14) at 2.) Specifically, she urges that GVC "manipulated . . . her benefits start dates to move them later each year, ultimately causing her to run out of leave time as required to accommodate the days off she needed for life-saving cancer treatment." (*Id.*) Smith further argues that "at the very least, this raises a fact question as to whether the FMLA's 3-year [statute of limitations] applies to Count II." (*Id.*) Second, Smith contends that the discovery rule should extend the statute of limitations far enough to permit her claim, because she did not learn of GVC's "willful scheme" until after her termination. (*Id.* at 2.) In support, she argues that, "if necessary, [she] can amend Count II to specify that she did not discover the FMLA scheme until well after her termination while she was reviewing the recent history of her employment."[2] (*Id.* at 3.)

The discovery rule "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). The Seventh Circuit has not determined whether the discovery rule applies in FMLA cases, although it has stated that "the 'discovery

---

[2] Smith filed an amended complaint without requesting leave from the court on October 17, 2016. (First Am. Compl. (Dkt. No. 13).) A party may amend a pleading more than 21 days after service "only with the opposing party's written consent or the court's leave," neither of which Smith obtained before filing her amended complaint. Fed. R. Civ. P (15)(a)(2). Regardless of whether she filed her amended complaint properly, the amended complaint differs from her current complaint only insofar as it refers to GVC as Elgin Riverboat Resort, which would not cure any of the deficiencies in Count II or IV.

6

rule' of federal common law . . . is read into statutes of limitations in federal-question cases . . . in the absence of a contrary direction from Congress." *Cada*, 920 F.2d at 450 (applying the discovery rule in an ADEA action such that the cause of action accrued when the employer communicated the termination to the employee).

For the purposes of deciding the present motion, we need not determine whether the discovery rule applies in an FMLA action or whether Smith has adequately pled a willful violation of the FMLA. Assuming *arguendo* both are true, Smith would still have to show that she discovered the last event relating to GVC's allegedly willful FMLA violations on or after July 13, 2013, or three years before she filed her complaint on July 13, 2016. The last event that Smith alleges in her complaint in relation to her employment is her termination on May 31, 2013.[3] (Compl. ¶ 55.) She does not allege that she discovered a willful violation of the FMLA by GVC after the date of her termination.

Smith argues, though, that her complaint "does not specify when [she] discovered GVC's willful scheme and started her 3-year clock running." (Pl.'s Resp. at 2.) Specifically, she argues that "she did not discover the FMLA scheme until well after her termination while she was reviewing the recent history of her employment," and that "[s]imilar to fraud, covert actions like those pled here by nature prevent victims from discovering their nefarious existence until well

---

[3] On its face, Count II of her complaint seems only to allege unlawful interference with the exercise of her rights, in violation of 29 U.S.C. § 2615(a)(1), at several points in the years leading up to her termination. (*See* Compl. ¶¶ 20, 28, 30, 68–78.) Importantly, the statute of limitations for actions arising from those alleged interferences began to run on the date of each alleged interference, all of which occurred prior to her termination on May 31, 2013. *Barrett v. Ill. Dept. of Corrections*, 803 F.3d 893, 896–97 (7th Cir. 2015). Smith does allege, however, that "GVC terminated [her] unlawfully by . . . violating the FMLA by discontinuing its application and precluding her from using paid vacation and other allotted days for her continuing treatments," (Compl. ¶ 10), and that GVC's violations of the FMLA caused her harm in the form of "future lost income," (*Id.* ¶ 78). Reading the complaint in the light most favorable to Smith, we conclude that she has sufficiently alleged that her termination was in violation of § 2615(a)(2) of the FMLA.

7

after adverse actions such as employment terminations." (*Id.* at 3.) Smith clearly knew, however, that GVC's actions implicated the FMLA. Indeed, she alleges that she worried "about GVC's limitations on her FMLA days" while still employed, (Compl. ¶ 28), that she "feared even asking about FMLA coverage" at points during her employment, (*id.* ¶ 30), and that GVC stated her "required treatment every quarter was for 'just a couple scans' and thus was not actual 'treatment' under the FMLA," (*id.* ¶ 20).

Because Smith's complaint, on its face, states that she had knowledge prior to July 13, 2013 of the FMLA violations she has asserted, she has pled herself out of court. *See Hollander v. Brown*, 457 F.3d 688, 691 fn.1 (7th Cir. 2009) ("[D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense.") Even if GVC's alleged violations of the FMLA were willful, Smith's claim is barred by the statute of limitations because she did not file her action until July 13, 2016, which is more than three years after the "date of the last event" constituting each alleged violation. 29 U.S.C. § 2617(c). Thus, we grant GVC's motion to dismiss Count II of Smith's complaint, without prejudice.

## II.     Count IV: Retaliatory Discharge

GVC also moves to dismiss Smith's state law retaliatory discharge claim, arguing that she failed to plead the essential element that her discharge violated a clear mandate of public policy, and that she failed to report or oppose GVC's alleged unlawful conduct. (Def.'s Mem. (Dkt. No. 6) at 5.) GVC further argues that Smith is not permitted to plead FMLA claims and claims under the Americans with Disabilities Act alongside a state law retaliatory discharge claim. *Id.* Smith counters that her claim does plead all the elements of an Illinois retaliatory

8

discharge claim, and that she is permitted to plead that claim in the alternative. (Pl.'s Resp. at 3–5.)

Under Illinois law, "[t]o state a valid retaliatory discharge cause of action, an employee must allege that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374, 233 Ill.2d 548, 553 (Ill. 2009). Although Illinois law does not define the precise limits of clearly mandated public policy, the tort of retaliatory discharge has only been allowed in two instances: "[1] where an employee is discharged for filing, or in anticipation of filing, a claim under the Workers' Compensation Act . . . or [2] where an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistleblowing.'" *Michael v. Precision Alliance Gr., LLC*, 2014 IL 117376, ¶ 30, 21 N.E.3d 1183, 1188 (Ill. 2014); *see also Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 941 (7th Cir. 2002) ("Illinois courts have identified two situations in which the 'clear mandate of public policy' standard is met: (1) when an employee is fired for asserting a workers' compensation claim . . . and (2) when an employee is fired for refusing to engage in illegal conduct or reporting the illegal conduct of others ('whistle blowing' or 'citizen crime fighting')" (citations omitted)). The Illinois Supreme Court has explained that "public policy concerns what is right and just and what affects the citizens of the State collectively . . . . [A] matter must strike the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878–79, 85 Ill.2d 124, 130 (Ill. 1981). Thus, retaliatory discharge claims are "denied where it is . . . clear that only private interests are at stake" because such private interests do not satisfy the public policy requirement. *Palmateer*, 421 N.E.2d at 879, 85 Ill.2d at 131.

Courts are reluctant to expand the limits of the public policy element of a retaliatory discharge claim. *Sutherland v. Norfolk S. Ry. Co.*, 826 N.E.2d 1021, 1029, 356 Ill. App. 3d 620, 629 (1st Dist. 2005) ("[T]his court . . . has declined to expand a private right of action to cover retaliatory discharges which did not occur in the Workers' Compensation Act or whistleblowing settings."). Instead, courts consistently limit the public policy element to retaliation for filing a Workers' Compensation claim or whistleblowing activities. *See, e.g., Buckner v. Atlantic Plant Maint., Inc.*, 694 N.E.2d 565, 569, 182 Ill.2d 12, 21 (Ill. 1998) (declining to expand retaliatory discharge to encompass the agent or employee who carries out an employer's discharge); *Lambert v. City of Lake Forest*, 542 N.E.2d 1216, 1220–21, 186 Ill. App. 3d 937, 943 (2d Dist. 1989) (observing that, "[i]n an attempt to restrict the tort of retaliatory discharge, Illinois courts have refused to find the existence of clearly mandated public policy in a variety of settings," such as violations of constitutional rights, retaliation for filing a claim with employer's health insurance, and discharge for work absences necessary to attend to injuries).

Smith argues, though, that her claim implicates public policy concerns—specifically, the sanctity of human life. (Pl.'s Resp. at 3–4.) Notably, several courts have held that retaliatory discharge claims stemming from FMLA violations do not satisfy the public policy element because the FMLA is concerned primarily with private interests. *See Sullivan v. Progressive Cas. Ins. Co.*, No. 03 C 8487, 2004 WL 1687123, at *6 (N.D. Ill. July 27, 2004) (dismissing a state law retaliatory discharge claim based on FMLA violations because the FMLA "protects private interests by balancing the needs of employers and employees," unlike whistleblowing or Workers' Compensation claims which "protect citizens from criminal activity or serious hazards"); *Callozzo v. Office Depot, Inc.*, No. 97 C 5308, 1998 WL 111628, at *3

(N.D. Ill. Mar. 6, 1998) ("The FMLA was only designed to 'balance the legitimate interests of employers with the needs of the employees in obtaining leave for certain medical conditions and compelling family reasons'" (citation omitted)); *Dormeyer v. Comerica Bank – Illinois*, No. 96 C 4805, 1997 WL 403697, at *1 (N.D. Ill. July 15, 1997) (same). Illinois law is clear that what constitutes public policy is a narrow, limited category, and we refuse to broaden that category to include FMLA claims that may implicate the "sanctity of human life." Accordingly, Smith has failed to properly allege the essential elements of a retaliatory discharge claim under Illinois law, and we grant GVC's motion to dismiss Count IV of her complaint, without prejudice.[4]

## CONCLUSION

For the forgoing reasons, we grant GVC's motion to dismiss, without prejudice. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: December 5, 2016
Chicago, Illinois

---

[4] Because Smith's failure to adequately plead the essential elements of a retaliatory discharge claim is dispositive, we need not address whether Smith failed to report or oppose GVC's unlawful conduct or whether she may plead ADEA and FMLA claims simultaneously with her state law retaliatory discharge claim.

11